

**ORDERED in the Southern District of Florida on July 16, 2013.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI  DIVISION

In re:

MARTA SOLODKO-GIMENEZ

     Debtor

_____/

BARRY E. MUKAMAL, AS CHAPTER 7
TRUSTEE,

      Plaintiff,

vs.

FAINA MEDVED

     Defendant

_____/

Case No. 09-39057-BKC-AJC
Chapter 7

Adv. No. 11-3105-BKC-AJC-A

## ORDER DENYING PLAINTIFF'S VERIFIED MOTION FOR SUMMARY FINAL JUDGMENT (CP# 56) AND DENYING FAINA MEDVED'S CROSS MOTION FOR SUMMARY FINAL JUDGMENT (CP # 63 )

**THIS CAUSE** came before the Court on December 17, 2012 at 3:00 p.m. upon *Plaintiff's*

*Verified Motion for Summary Final Judgment* (CP# 56) ("Trustee's Motion"), and upon *Faina*

*Medved's (A) Response in Opposition to Plaintiff's Verified Motion for Summary Final Judgment (CP# 56) and (B) Cross Motion for Summary Final Judgment and Incorporated Memorandum of Law* (CP# 63) ("Medved Motion").  The Court heard argument of counsel, and reviewed the affidavits of Faina Medved, dated December 11, 2012 (the "Medved Affidavit"), Marta Solodko-Gimenez, the Debtor, dated December 11, 2012 (the "Debtor Affidavit"), and Irina Shlyam, dated December 9, 2012 (The "Shlyam Affidavit"), submitted in support of Medved's Motion.  Upon due deliberation, the Court denies summary judgment based upon the following.

### UNDISPUTED FACTS

_____The Debtor commenced this bankruptcy case as a Chapter 13 case on December 31, 2009. The case was converted to a Chapter 7 case on July 6, 2011, after which time Barry E. Mukamal was appointed as the Chapter 7 Trustee ("Trustee").

The Trustee commenced this action by filing *Trustee's Complaint to: (1) Avoid Fraudulent Transfers; (2) Avoid Preferential Transfer of Property; and (3) to Determine Right, Title and Interest in Real Property* (CP # 1) ("Complaint")*.*  As an initial response to the Complaint, Medved filed *Defendant's Motion to Dismiss for Failure to State a Claim and Failure to Join Parties or Alternatively for a More Definite Statement Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure* (CP# 8)("Dismiss Motion").  The Dismiss Motion was granted in part and an *Order on Defendant's Motion to Dismiss for Failure to State a Claim and Failure to Join Parties or Alternatively for a More Definite Statement Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (CP#8)* (CP# 17) was entered providing, *inter alia,* that Counts three and four of the Complaint were dismissed.

On March 8, 2012, Medved filed *Defendant Faina Medved's Answer and Affirmative*

2

*Defenses to Trustee's Complaint to: (1) Avoid Fraudulent Transfers; (2) Avoid Preferential Transfer*

*of Property; and (3) to Determine Right, Title and Interest in Real Property* (CP# 26)("Answer").

The Answer denied the substantive allegations in the Complaint and asserted two Affirmative

Defenses, as follows:

**First Affirmative Defense**

1.      The Complaint fails to state a claim for relief against Medved.

**Second Affirmative Defense**

1.      Medved purchased the real property ("Property") in question.  The Property was intended to, and for all times relevant, has been the place of actual residence of, and the homestead for, Medved.

2.      Medved funded the purchase of the Property by a gift of the full purchase price to Medved by Medved's niece.

3.      Medved has funded and paid any and all maintenance fees and expenses to the board of the condominium for the Property.  Medved has funded and paid all other ownership type expenses, including real estate taxes, due or on account of the Property.

4.      At the time of the purchase of the Property, Medved was relatively new to this country, and her command of the English language was not strong.  Medved having immigrated from a former communistic country, was nervous and not knowledgeable about the laws of ownership of property in the United States.  Further, Medved only has one child, the Debtor herein.  Therefore, Medved requested that the Debtor place her name on title to the Property in order to protect and assist Medved should any issues regarding ownership arise, as well as to ensure the Property would pass to the Debtor in the event something should happen to Medved.

5.      As Medved trusts the Debtor, Medved did not pay much attention to issues concerning the title to the Property.  Medved always understood and assumed that proper title would recognize her ownership in the Property.

6.      At no time did the Debtor pay any of the carrying expenses and costs of the Property.  The Debtor likewise did not fund of the purchase price.

3

7.    It was always intended that while Medved was alive, that Medved would live in the Property, and the Debtor would have only a title interest in case Medved should pass away.  It was never assumed or expected that the Debtor would have a true beneficial ownership interest in the Property while Medved remained alive.  The Debtor understood this well.

8.    Other than for a short period of time, the Debtor did not reside at the Property.

9.    To the extent that the Debtor had any title interest in the Property at any time, the Debtor held such interest in a purchase money resulting trust or constructive trust for the benefit of Medved the true beneficial owner of the Property.

10.    As a result, the interest in the Property that the Debtor may have had in the Property was and remains economically valueless, and therefore any transfer by the Debtor of an interest in the Property to Medved was not a transfer for less than reasonably equivalent value.

11.    As a result, the interest in the Property that the Debtor may have had in the Property was and remains economically valueless, and therefore any transfer by the Debtor of an interest in the Property to Medved could not contribute to the alleged insolvency of the Debtor.

12.    The Debtor did not, and does not maintain any control over the Property.  The Debtor does not maintain any possessory interest in the Property.

13.    The transfer in question in the Complaint was not concealed by the Debtor.  The transfer in question was disclosed by the Debtor in her bankruptcy paperwork.

14.    The transfer in question in the Complaint was not made by the Debtor after suit was threatened against her or after suit was filed against her.

15.    The Debtor has not absconded or other disappeared.

16.    The transfer in question in the Complaint is not avoidable by the Trustee.

Based on the record, on November 2, 2012, the Trustee filed the Trustee's Motion.  On December 12, 2012, Medved filed her response and Cross Motion for Summary Judgment in opposition to the Trustee's Motion.  In support of her Cross Motion, Medved presented the Medved

4

Affidavit, the Debtor Affidavit, and the Shlyam Affidavit.

The dispute herein concerns the title interest in a certain condominium located at Unit 2101, 300 Bayview Drive, Sunny Isles Beach, Florida 33160 ("Property"). There is no dispute concerning the deeds that were recorded in the public records that relate to the Property, and were presented by the Trustee, to wit:

a)    Warranty Deed, dated June 28, 2000, ("Warranty Deed") that reflects Thelma Osherow joined by her husband, Carl Osherow and David Lockshin, joined by his wife, Rita Lockshin, as grantors, to the Debtor, as grantee (See, Trustee Motion, Exhibit "1");

b)    Quit Claim Deed, dated August 10, 2000, ("Quit Claim Deed #1") that reflects the Debtor, as grantor, to the Debtor and Medved, as grantee (See, Trustee Motion, Exhibit "3");

c)    Quit Claim Deed, dated July 15, 2009, ("Quit Claim Deed #2") that reflects the Debtor and Medved, as grantor, to Medved, as grantee (See, Trustee Motion, Exhibit "4").

The Debtor did not list an interest in the Property on "Schedule A-Real Property" in her Bankruptcy Schedules (CP#9, main case); but, she did disclose the transfer by her on July 15, 2009 (as reflected on the Quit Claim #2) in the Statement of Financial Affairs with the following comment:

Mother's homestead condominium; debtor's name was only on mother's condominium for estate planning purposes; Value received none.

The Debtor also filed the Medved Affidavit, the Debtor Affidavit and the Shlyam Affidavit, to establish the following facts. The Trustee has not refuted these facts.

I.    Medved is the aunt of Shlyam. They both maintain a close relationship. The purchase price for the Property was funded by a gift of Shlyam's personal funds to Medved. It was intended that Medved would reside in the Property, and make it her home. The

Debtor did not receive any of the funding provided by Shlyam.  The Debtor did not

fund any part of the purchase of the Property.

ii.    Medved is an immigrant from the Ukraine who was not familiar or comfortable with

American law.  She wanted to make sure that if something happened to her, her only

child – the Debtor – would receive the Property.   Knowing her mother's desire to

make sure the Debtor receive the Property upon Medved's passing, the Debtor

Affidavit explains:

a)    On June 28, 2000, the Debtor and Medved attended the closing of the
purchase of the Property.   The attorney representing the title company, Ira R.
Shapiro, prepared the Warranty Deed dated  June 28, 2000.  The Warranty
Deed conveyed title to the Debtor only, as grantee.  The Debtor states she did
not read the Warranty Deed prior to the closing.

b)    Shortly after the closing of the purchase of the Property, the Debtor assured
Medved that she would remain on the title, so should something happen  to
Medved, the Property would pass to the Debtor without any problems; she also
explained the benefits of home ownership to Medved and prepared Quit Claim
Deed #1 dated August 10, 2000 conveying the Property to the Debtor and
Medved, using a form deed.  With this Quit Claim Deed, the Debtor
understood that both Medved and the Debtor held title to the Property.

c)    Sometime in the beginning of the year 2009, the Debtor states that she was
surprised to learn she was still on title to the Property. She mistakenly believed
that when she purchased her own Property in 2002, this would automatically
remove the Debtor's name from any other real property owned in the county
or state.

d)    Once the Debtor learned that her name was still on title to the Property, she
spoke with Medved about removing her name from the Property.   Both the
Debtor and Medved agreed that it was not necessary to keep the Debtor on title
to the Property given Medved's familiarity and comfort level with the law
now.  Therefore, the Debtor drafted Quit Claim Deed #2 dated July 15, 2009.

The Medved Affidavit establishes that at all times since the purchase of the Property, Medved

has paid, from her own personal funds, all condominium association maintenance and assessment

6

fees.  Medved has also paid all utility, telephone and cable television expenses and fees.

Medved attests that she always intended to be the sole and exclusive owner of the Property. Since the purchase of the Property over twelve years ago, except for a brief period of approximately six months, Medved lived and continues to live exclusively in the Property by herself.  The Debtor only lived in the Property while the Debtor's apartment was being constructed for the Debtor.  During Debtor's occupancy of the Property with Medved, Medved paid all the expenses and charges of the Property.    The Debtor states she never expected to derive any benefit from the Property while Medved is alive.

## ANALYSIS

Under Rule 56 of the *Federal Rules of Civil Procedure*, as incorporated by Rule 7056 of the *Federal Rules of Bankruptcy Procedure*, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317(1986).

On a motion for summary judgment, the Court is not to make credibility determinations regarding proffered affidavits, but is instead required to make sure that the affidavit is based on personal knowledge and that the affiant is competent to testify about the matters stated therein. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242(1986); *In re French*, 499 F.3d 347(4th Cir. 2007). The Court will therefore consider the unrefuted factual statements made in the Medved Affidavit, the Debtor Affidavit or the Shlyam Affidavit to be the facts of this case for the purpose of ruling on the summary judgment motions.  However, even accepting the facts as stated in the affidavits, the Court believes that neither party is entitled to summary judgment.

7

Section 548(a)(1)(B) of the Bankruptcy Code provides that a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. In the instant case, the Debtor transferred a one-half interest in legal title to Medved within one year prior to the bankruptcy case. The Trustee seeks recovery of that half interest as having been transferred for less than equivalent value, while the Debtor was insolvent. The Debtor asserts such half interest is nothing more than "bare" legal title and was of no value.

Having considered the arguments in light of the facts as stated in the affidavits, the Court does not accept Debtor's argument she had only "bare" legal title to the Property so as to essentially nullify her interest as it appears in the recorded title of the Property. The July 15, 2009 transfer was a transfer of an unrestricted interest in property of the Debtor for which the Debtor received no value in exchange for the transfer.

Florida law requires an interest in real property to be recorded to prevent any creditors or subsequent purchasers from obtaining or recovering against the real property. *See, e.g., In re Abrass*, 268 B.R. 665 (Bankr. M.D. Fla. 2001) (under Florida law, transfer of permanent interest in real property is not enforceable against creditors unless conveyance is properly recorded); *In re Shannis*, 229 B.R. 234 (Bankr. M.D. Fla. 1999) (pre-petition transfer of real estate to Debtors' son was not effective until recording of deed, and is subject to Trustee's powers); *In re Levy*, 185 B.R. 378 (Bankr. S.D. Fla. 1985) (unrecorded deed or interest is invalid against interests of subsequent bona fide purchaser); *In re May*, 19 B.R. 655 (N.D. Fla. 1982) (trustee as hypothetical judgment lien creditor

8

on petition date became part owner of leasehold interest in real property mistakenly titled/deeded in name of debtor and partnership). In Florida, an interest in real property must be reflected in the public records of the county in which it is located. *See* Fla. Stat. § 695.01(1). Section 695.01(1) of the Florida Statutes specifically states that:

> no conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.

Requiring the recordation of interests in real property furthers the public interest of promoting the equitable policy that secret interests, liens and equities are not favored in a complex commercial world. *See, May,* 19 B.R. at 659, citing *Luria vs. Bank of Coral Gables*, 106 Fla. 175 (Fla. 1931); *Rabinowitz vs. Keefer*, 100 Fla. 1723 (Fla. 1931). *See also, Fong vs. Batton*, 214 So.2d 649, 652 (Fla. 3rd DCA 1968); *Buck vs. McNab, Jr.*, 139 So.2d 734, 738-39 (Fla. 2nd DCA 1962). Those who permit records to mislead others must bear the loss as a result of the operation of Section 695.01. *Rabinowitz v. Houk*, 129 So. 501 (Fla. 1930). Here, it is undisputed that the Property was first purchased by the Debtor in 2000. Debtor transferred one-half interest in the Property to the Debtor's mother, the Defendant, in that same year. It is further undisputed that shortly before filing her bankruptcy petition, the Debtor transferred her remaining one-half interest in the Property to the Defendant. The Debtor's transfer of her one-half interest in the Property to Defendant on July 15, 2009, as a matter of law, satisfies the first element of section 548(a)(1)(B) of the Code.

The transfer being without any consideration, it appears the second element of section

9

548(a)(1)(B) may be satisfied. The Defendant argues that the Debtor's interest which was transferred was "bare" legal title, and was of no value, therefore no consideration was warranted. However, the Court does not believe Debtor's interest was valueless. The Debtor owned a one-half interest in the Property pursuant to the public records and was legally entitled to share in the value of the Property with the Defendant. The Debtor and Defendant may have had a private understanding that the Debtor was not to assert ownership or control over the Property, but such private agreements do not affect the recognized legal ownership of property in Florida, as set forth in the public records, which the Trustee as a hypothetical judgment lien creditor asserts.

Debtor argues that she held title in a form of constructive trust or purchase money resulting trust, and relies on Judge Ray's opinion in *Kapila v. Moodie et al. (In re Moodi)*, 362 B.R. 554 (Bankr. S.D.Fla. 2007). *See also, Tolz v. Miller (In re Todd)*, 391 B.R. 504 (Olson, J.). IN the foregoing cases, the subject properties were simply being "parked" with the Debtor for the purpose of a single transaction, and were then promptly reconveyed. *Moodi*, 362 B.R. at 550; *Todd*, 391 B.R. at 508. That is not what occurred here. The Debtor in this case was added to the deed on the Property for the reasons stated in the Defendant's affidavit, including for estate planning purposes.

The Defendant cites to Judge Isicoff's opinion in *In re Gonzalez*, Case No. 11-26457-BKC-LMI to support her position she holds only bare legal title. In *Gonzalez*, the court determined debtor held bare legal title to a property on which her mother admittedly added her to the deed for estate planning purposes. Judge Isicoff held that "by clear and convincing evidence produced at the hearing on this motion, the debtors have contributed nothing to the purchase, maintenance, insurance, taxes or upkeep of the subject property and that the debtors have thereby met the standard of proof required to prevail on their motion." The court determined the trustee failed to rebut the evidence presented

10

by the debtors and ruled the debtors held only bare legal title to the subject property and said property was not deemed property of the estate.  The Court is not persuaded by *Gonzalez*, however.  The Court previously stated, as between the Debtor and the Defendant, there may have been an understanding that the Debtor was to assert no ownership or control over the Property, but such a private understanding does not overcome the requirements of the recording statute vis a vis third parties, like the Trustee, who are not privy to the private understanding.  Nonetheless, the Court believes there remain issues of fact with regard to whether a trust relationship exists.

The concept of a resulting trust "arises by implication of law and is founded on the presumed intention of the parties that the one furnishing the money should have beneficial interest, while the other held the title for convenience or for a collateral purpose." *Todd*, 391 B.R. at 508 (citing *Frank v. Eeles*, 152 Fla. 869, 13 So.2d 216, 217-18 (Fla. 1943))*.* In this case, the one furnishing the money to purchase the Property was a relative of the Defendant who gave the Defendant the money as a gift. The Defendant chose to purchase the Property in the Debtor's name, to protect and assist Medved should any issues regarding ownership arise, as well as to ensure the Property would pass to the Debtor in the event something should happen to Medved.  It does not appear the Debtor's interest in the Property  was at any time limited, even if the Debtor never thought to exercise control over the Property. There is nothing in the record before this Court to indicate that the Defendant and the Debtor created a trust relationship. The fact that title was placed in the Debtor's name or in both names – for the purpose of assuring ownership interest upon death or other circumstance – is insufficient to establish a trust, particularly one that would have priority over the Trustee's interest, which interest is deemed to be as a bona fide purchaser for value.  To hold otherwise would emasculate the Florida Recording Statute and create uncertainty in the validity of titles to real estate.

Although it does not appear from the affidavits and the record that a trust relationship exists under the laws of the state of Florida, the Court will necessarily consider evidence on this issue to determine whether the Defendant can persuade this Court that a trust relationship existed at the time of the transfer.  If the Defendant cannot prove a trust relationship, then the Debtor will not be deemed to have held bare legal title to the Property, and the transfer without any consideration is a transfer for less than equivalent value.

Notwithstanding the title issues, from the record, it does not appear that said transfer was made while the Debtor was insolvent or that the transfer caused the Debtor to become insolvent. Debtor's Schedules reflect that the Debtor was not insolvent at the time of filing.  Schedule A indicates that Debtor owns real property valued at $278,500.00, against which there is a secured claim of $161,594.44.  It would therefore appear that the Debtor has $116,905.56 in equity in her real property.  In Schedule B, the Debtor indicates she has another $3,350.00 worth of personal property. Thus, at the time of filing, the Debtor appears to have assets valued at $120,255.56; and, the Debtor's Statement of Financial Affairs reveals that the Debtor's financial circumstances have not changed significantly within the two years prior to her filing.  A review of the Claims Registry further indicates the total amount of the claims filed in this case is $118,735.91.  Because the claims do not exceed the Debtor's assets, it appears there is no balance-sheet insolvency.

Factual issues therefore remain as to whether the transfer was made while the Debtor was equitably insolvent or resulted in the Debtor becoming equitably insolvent.  Moreover, factual issues remain as to whether the Trustee can establish with certainty a balance-sheet insolvency, as a result of the transfer of the Property.  Accordingly, based on the foregoing review of the record before the Court, it is

ORDERED AND ADJUDGED that the Trustee's Motion and the Medved Motion are DENIED.

###

Copies furnished to:

James Miller, Esq.
Brian Behar, Esq.